May it please the Court, I'd like to reserve seven minutes time for rebuttal. May it please the Court, the issue on appeal is fairly straightforward. My client, Protas, Spivok & Collins LLC, was a law firm that filed an underlying lawsuit in Prince George's County, Maryland and was subsequently sued by my colleagues in federal court on the basis of Fair Debt Collections Practices Act, Maryland Consumer Protection Act, and the Maryland Debt Collections Practices Act. My client, the law firm, immediately filed a motion to compel arbitration. At that point, the judge stayed the case and denied the motion to compel arbitration on the basis that my client hadn't shown that we were party to the underlying arbitration agreement. At that point, we have de novo review with this court and we feel the trial court missed that argument on the basis that under the arbitration agreement, there is an ability for anyone, any person who is servicing the subsequent holder of the note, and the servicing is not defined in the arbitration agreement in the record. What this court does, if it's not defined in the contract, it will look to case law next in the Shulman case versus access and surplus insurance, and if it's not defined in case law, in that particular case it wasn't defined in Maryland case law, you look to the dictionary definition. Servicing is not specifically defined in the dictionary definition, but service is. Service is, in our brief, three different places, in the Britannica, Merriam-Webb Traditionary, and also in Oxford. It is basically to service any core activity or to make payment. That's exactly what my colleague concedes in the complaint in this case. Paragraph 3, Joint Appendix 7, specifically, without equivocation, the plaintiff's law firm said that my client obtained payment and judgments on behalf of Velocity. At that point, we should squarely, my client should squarely qualify under the arbitration agreement to be able to compel arbitration. Doesn't the Prosper Funding documents describe what servicing means? The documents that you're referring to regarding the arbitration? Servicing is not defined, Your Honor. Well, it says servicing of loans, right? Servicing per se is not defined in any of the documents. But it says servicing, if you look at it, the reading of it, it says servicing of loans. I believe you're referring to, Your Honor, servicing of the note. It's in the U section of, it's in the- Prosper Services All Loans. Unless you'd like to refer me, Your Honor, to what specific point in the appendix you're talking about. If you're talking about the U under the arbitration clause definition, it says servicing the note. The note, the loan, either one, but it does describe what you're servicing, correct? Correct, Your Honor. And servicing the note is what is the question and what servicing means in the context of any person. In the law firm, it's conceded, it's admitted that was obtaining payments and judgments on behalf of Velocity. Velocity was assigned the note by Prosper Funding and the law firm, my client, was obtaining payments and judgments as set forth in the complaint of paragraph three, joint appendix seven. And as such, the district court should have compelled arbitration. That's exactly- Counsel, are there any, well, I mean, I just think dictionary definitions probably have a pretty limited utility when you're talking about terms of art, like what does it mean to service a loan? And I guess, are there cases that treat law firms representing lenders as loan services, loan servicers for regulatory or contractual purposes? Can you, Your Honor, we could not find any upon our research.  And I think that's because everyone knows what a loan servicer is, right? I mean, if we were to say that a law firm representing a lender becomes a loan servicer, I think that we would throw the entire industry into disarray as all of these law firms suddenly became subject to all kinds of regulatory and legal restrictions as loan servicers. And you want us to do that based on a dictionary definition of service? Your Honor, I'm asking this court to compel arbitration on de novo review because my colleague admitted that my client was obtaining payments and judgments on behalf of Velocity. And we're saying if this court, like in Shulman, looks to the definition- But I mean, law firms do that all the time, obtain payments on behalf of their clients. Like, that's why lawyers sue to get money for their clients. I'm just very worried, I guess, I want to give you a chance to address the sort of implications if law firms suddenly became loan servicers when they represented lenders. With all respect, Your Honor, I do think that's a very sweeping statement that all law firms collect payments. In this particular case, it's admitted that my client, Proto-Smith & Collins, is a debt collection law firm. In my colleague's brief, they refer this court to the website that it concedes it's a debt collection law firm. So this is a specific kind of law firm. And we've also referred in the reply brief, Your Honor, that Proto-Smith & Collins actually obtains payments servicing the note. It's on the website of the law firm. It's in the reply brief. So I do think this court should remand to compel arbitration as the law firm was subsequently servicing the note on behalf of Velocity. Thank you, sir. Thank you. Your Honor, as may it please the court, I would like to start by addressing those couple of questions that were addressed to my learned friend, Mr. Flint. The references in the documents that were filed in the underlying collection action to servicing are instructive because the client of PSC was not the original creditor here. It was a debt buyer. The original creditor had a servicing relationship, and it's described around Joint Appendix 69. It says that Prosper Marketplace is the agent for such servicing. And then it explains the kind of things that this Prosper Marketplace is doing. They're going to service the loan. All communications must be made to Prosper. Prosper appoints PMI as servicer or agent to provide administrative management servicing or other services. Does the law firm accept any payments from the borrower? So, that is an interesting point because it doesn't say that specifically. It says administrative management servicing or other services. And normally, accepting the regularly scheduled payments is part of servicing a loan. It does actually distinguish between that sort of collection of payments, installments that are normally due on time, and attempts to collect because the agreement goes on to talk about what happens if you're in default and how they might hire a debt collector, distinct then from PMI, the servicer, and that you might be responsible for attorney's fees and so on. So, it contemplates a difference between servicing and the servicer, PMI, originally, and the people who do debt collection work, like PSC. There's a basic difference between collecting funds from the borrower and dealing with the borrower day-to-day and collecting funds from your client. I mean, those are two different things. A servicer would collect money from the borrower and the rest, would get its payment from the lawyer-client relationship. And those are different things, are they not? So, yes, those are different things. The relationship of a debt-collecting lawyer versus the relationship of the servicer is very different. Obviously, we don't know in this case how PSC is getting paid, whether they're on contingency, whether they're being paid for broader services. All we know is what was alleged, which is that all they really do is file these lawsuits. I mean, those are not just different things, but the difference is, in your view, you contend that it's not just different things, but that the difference here governs the resolution of this case. Yes, they are completely different things. And the difference is actually highlighted in the other places where the nature of servicing is discussed in statutes. I, too, have not been able to find any case directly on point about exactly what servicing means in the context of debt-collecting lawyers. Well, given that difference, what more is there to add? Well, it is tempting to say that there is nothing more to add. If they're not a servicer, they don't have a right to compel arbitration. And the district court was correct below. And this case should result in an affirmance, and the case should proceed. All right. In other words, you're saying there's nothing more to add. I'm going to ask my colleagues if they have some questions of you. Judge Harris? No. We have nothing more to add either. Thank you, Your Honor. Mr. Flint? The Schulman case is important for this court's resolution. In Schulman, there was a dispute over whether or not demand was specifically defined in a lawsuit by a law firm against Axis Surplus Insurance for a DOJ criminal subpoena. And the insurance carrier brought a coverage action, and they crossed summary judgments. And this court looked to the dictionary definition when the Maryland case law didn't set forth what demand was under the policy. This case is no different. Servicing is not specifically defined. If you were to look at the dictionary definitions, clearly obtaining payments as set forth, or obtaining payments. We ask this court to remand to compel arbitration. All right. Thank you, sir. Thank you. We'll adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Pamela A. Harris, DeAndrea Gist Benjamin